## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FELIX RODRIGUEZ, | ) | 3:23-cv-00823 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHIEF ALARIC J. FOX, OFFICER | ) | |
| STEVEN GRASHANS, SHAILA M. | ) | |
| BAILEY A/K/A SHEILA M. BAILEY, | ) | |
| DEBRA COLLI, AND STEVEN E. | ) | |
| SIDOR, | ) | |
| *Defendants*. | ) | March 28, 2024 |

### RULING ON MOTION TO DISMISS FILED BY
### DEFENDANTS FOX, GRASHANS, AND BAILEY

Sarala V. Nagala, United States District Judge.

Plaintiff Felix Rodriguez, presently incarcerated at Jackson Correctional Institute in Malone, Florida, and proceeding *pro se*, brings this action removed from state court against two members of the Enfield, Connecticut Police Department, Defendant Chief Alaric J. Fox and Defendant Officer Steven Grashans; Enfield Town Clerk Defendant Sheila M. Bailey; real estate agent Defendant Debra Colli; and former homeowner Defendant Steven E. Sidor. Plaintiff claims he is the lawful owner of 52 South Road in Enfield, and that efforts by Defendants to reclaim the property in question constitute fraud and led to his false arrest and the illegal taking of his property. Defendants Fox, Grashans, and Bailey move to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the following reasons, Defendants' motion to dismiss is GRANTED, with leave to amend.

### I.      FACTUAL BACKGROUND

The Court accepts the following allegations in Plaintiff's complaint as true for purposes of deciding Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On August 26, 2014, Plaintiff purchased Defendant Sidor's property located at 52 South Road in Enfield, Connecticut for $50,000, and began making repairs on the property. Compl., ECF No. 1-1 ¶¶ 12–13.[1] On November 18, 2018, Plaintiff rented the property to two tenants. *Id.* ¶ 14. One week later, the tenants notified Plaintiff that they had been contacted by real estate agent Defendant Colli and police officer Defendant Grashans, who informed them that Federal National Mortgage owned the property, not Plaintiff. *Id.* ¶ 15.

Plaintiff contacted Defendant Grashans the next day, asserting he was the rightful owner, and then attempted to record his deed on the property at Enfield Town Hall. *Id.* ¶¶ 16–17. Plaintiff was "turned away" by Defendant Bailey, however. *Id.* ¶ 17. Over the next few weeks, Plaintiff repeatedly attempted to record his deed, but Defendant Bailey repeatedly told Plaintiff no one at Town Hall would record the deed because she had been informed by Defendant Grashans that Plaintiff's deed was fraudulent. *Id.* ¶ 18. On January 9, 2019, Defendant Colli intercepted Plaintiff's tenants when they attempted to enter the property. *Id.* ¶ 19.

In February of 2019, Defendant Grashans, together with Detective Callaghan, began to contact Plaintiff's family members. On February 19, 2019, Defendant Grashans and Detective Callaghan unsuccessfully attempted to locate Plaintiff's uncle. *Id.* ¶ 20. The following week, they located and interviewed Plaintiff's brother. *Id.* ¶ 22. Months after the interview, an arrest warrant was issued against Plaintiff's brother, on unidentified charges, which were "quickly" dismissed. *Id.* ¶¶ 22–23. Plaintiff claims his brother's arrest was intended as "leverage to force [Plaintiff] to surrender his property." *Id.* ¶ 24.

On February 19, 2019, Defendant Grashans and Detective Callaghan spoke to Defendant Sidor, who "allegedly denied" having sold the property to Plaintiff. *Id.* ¶ 21. Plaintiff claims that

---

[1] Unless otherwise noted, the paragraph numbers in the complaint pertain to the paragraphs in the "Statement of Facts" section.

Defendant Sidor was induced by Defendant Grashans and Detective Callaghan to produce a false statement that Plaintiff's deed was not signed by him as the former owner.  *Id.* ¶ 28.[2]  Plaintiff alleges Defendant Sidor "provided false information in order to assist [Defendants] to take possession of a property they knew or should have known belonged to [Plaintiff] and not 'Fannie Mae,' doing so to obtain a considerable monetary donation directly to the Enfield Police Department."  *Id.* ¶ 26.  Plaintiff asserts that, as a general matter, there has been corruption on the Enfield police department during the relevant time period.  *Id.* ¶ 27.

Plaintiff reattempted to record the deed from May to August of 2022.  *Id.* ¶ 29.  Instead of recording the deed, Defendant Bailey allegedly released the Quitclaim to Defendant Grashans and Detective Callaghan, without Plaintiff's consent, on July 14, 2022, and August 2, 2022.  *Id.* ¶ 30.

Around this time, Defendant Grashans and Detective Callaghan interviewed Plaintiff's then-girlfriend, who admitted she had recently mailed the deed and a recording fee to Enfield Town Hall.  *Id.* ¶¶ 31–32.  Defendant Grashans and Detective Callaghan told the girlfriend not to contact Plaintiff, or she may be arrested for conspiracy because this was not Plaintiff's first time "stealing a $ Four Million dollar home."  *Id.* ¶ 31.  As a result, Plaintiff and his then-girlfriend are no longer in communication.  *Id.* ¶ 32.

On or about January 19, 2019, Defendant Grashans issued an arrest warrant against Plaintiff with the approval of Defendant Fox.  *Id.* ¶ 34.  The complaint does not specify the charge(s) in the arrest warrant.  On November 26, 2019, Plaintiff was extradited from Florida, where he was incarcerated, to Harford, Connecticut on an interstate detainer agreement.  Plaintiff

---

[2] Plaintiff also alleges that Defendants Grashans, together with Detective Callaghan, induced a notary public, Jesse Brownback, to falsely state that he did not notarize Plaintiff's quitclaim deed.  *Id.* ¶ 25.  Mr. Brownback was named as a defendant in this action, but Defendants Fox, Grashans, and Bailey represented in their notice of removal that Mr. Brownback is deceased.  ECF No. 1 ¶ 5.  The Court thus terminated him from this action.  ECF No. 24.

was thereafter returned to Florida on January 22, 2022, to continue serving a sentence imposed in 2014 for vehicular homicide.  *Id.* ¶¶ 9–11; *see also* Compl., "Parties" Section, ¶ 2.

## II.     PROCEDURAL HISTORY[3]

On June 23, 2023, Defendants Fox, Grashans, and Bailey timely removed the underlying state action of *Felix Rodriguez v. Chief Alaric J. Fox*, No. HHD-CV23-5078289-S, to federal court on the basis of federal question jurisdiction.[4]  *See* Not. Removal, ECF No. 1 ¶ 8.

Plaintiff brings a single count of fraud against all Defendants in their individual and official capacities for $10 million in damages.  *See* ECF No. 1-1 ¶ 35, 9–10.[5]  Plaintiff also claims Defendants' actions led to Plaintiff's "false arrest, illegal taking of property and his land, and loss of relationship with his girlfriend, pain and suffering, emotional, mental, and physical distress." *Id.* ¶ 38(f).

Defendants Fox, Grashans, and Bailey move to dismiss Plaintiff's complaint for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Defs.' Mot. Dismiss, ECF No. 32.  Defendants filed the "Notice to Self-Represented Litigant concerning Motion to Dismiss" required by Local Rule 12(a), which provides *pro se* plaintiffs notice that their claims may be

---

[3] Defendants note that Plaintiff previously filed a near identical complaint, which was dismissed without prejudice for failure to pay the filing fee or properly move for leave to proceed *in forma pauperis*.  *See Rodriguez v. Fox*, No. 3:22-cv-01261-KAD, ECF No. 10.

[4] Defendants assert both diversity and federal question jurisdiction in their notice of removal.  Neither party provides the Court with information about Plaintiff's domicile, aside from the fact that he is presently incarcerated in Florida; thus, although the amount in controversy is in excess of $75,000, the Court cannot find there is complete diversity of citizenship as required under 28 U.S.C. § 1332(a).  *See Collazo-Portillo v. D'Avirro*, No. 3:06-CV-2028 (PCD), 2007 WL 1614527, at *3 (D. Conn. May 29, 2007) ("[C]ourts have held that the domicile of a prisoner before he or she was imprisoned is presumed to remain his or her domicile [for diversity jurisdiction purposes] while he or she is in prison.").  Nonetheless, the Court finds that Plaintiff's claims for false arrest under the Fourth and Fourteenth Amendment, and for takings under the Fifth Amendment of the United States Constitution, provide the Court with federal question jurisdiction under 28 U.S.C. § 1331, and the Court would have supplemental jurisdiction over the common law fraud claims in this action under 28 U.S.C. § 1367.

[5] It does not appear that Plaintiff intended to name Detective Callaghan as a defendant in his complaint.  He makes mention of Detective Callaghan in the "parties" section of his complaint, but does not name him as a "Defendant." *See* ECF No. 1-1 at 4.  Detective Callaghan has not been included in Plaintiff's case caption, *see id.* at 3, nor does it appear Plaintiff ever attempted to serve him.  Therefore, the Court does not treat Detective Callaghan as a defendant. Plaintiff can choose to name Detective Callaghan as a defendant in any amended complaint.

dismissed if they do not file an opposition.  *See* Not., ECF No. 33.  The Court granted Plaintiff a motion for extension of time to file an opposition, *see* ECF No. 50, but to date, no opposition has been filed.  The Court therefore considers Defendants' motion to dismiss unopposed.  Discovery has been stayed during the pendency of the motion to dismiss.  ECF No. 48.

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*,

550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Federal Rule of Civil Produce 9(b) provides a heightened pleading standard for claims of fraud or mistake. Rule 9(b) requires that parties "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P 9(b). Under the Rule, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "[M]ere general allegations that there was fraud, corruption or conspiracy or characterizations of acts or conduct in these terms are not enough . . . no matter how frequently repeated." *See Space Hunters, Inc. v. U.S.*, 500 F. App'x 76, 79 (2d Cir. 2012) (summary order) (quoting *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972)).

In assessing whether a claim has been properly pleaded, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

## IV. DISCUSSION

The Court finds that Plaintiff has failed to plausibly state a claim for fraud against Defendants Fox and Bailey under Federal Rule of Civil Procedure 12(b)(6), and against Defendant Grashans under the heightened pleading standard in Federal Rule of Civil Procedure 9(b).

6

Plaintiff's claims for false arrest and illegal takings fail under Federal Rule of Civil Procedure 12(b)(6) as well.

A. Fraud

Under Connecticut law, there are four elements of common law fraud:

> Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed . . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment . . . .

*Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 114 (D. Conn. 2010) (quoting *Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005)). As presently stated, Plaintiff's complaint does not plausibly allege fraud by any Defendant, as opposed to a routine law enforcement investigation.

Defendant Fox is only alleged to have "approv[ed]" the issuance of an arrest warrant against Plaintiff, and to have failed to properly supervise Defendant Grashans and Detective Callaghan in their investigation. ECF No. 1-1 ¶¶ 34, 36. There are no allegations of any false statements by Fox, let alone knowledge that any of the statements in the arrest warrant were untrue. Thus, Plaintiff's fraud claim is not plausibly alleged against Defendant Fox under Federal Rule of 12(b)(6), and by implication fails Rule 9(b)'s heightened pleading standard.

Similarly, Plaintiff fails to plausibly allege a fraud claim against Defendant Grashans under Rule 9(b)'s heightened pleading standard. Plaintiff alleges that Defendant Grashans "[i]nformed [Plaintiff] that everything with his property was fine or 'OK'" and that he "[p]romised [Plaintiff] he would receive his deed 'soon.'" *Id.* ¶ 37. Even if the Court were to assume that these allegations are sufficient under Rule 12(b)(6), they are highly general, and do not meet the heightened pleading requirements for fraud under Rule 9(b). For instance, they do not allege when

or in what context the statements were made.  While the complaint alleges specific facts about Defendant Grashans' interactions with other people, it does not specify how, when, or in what context any representations were allegedly made to Plaintiff.  Plaintiff also does not allege that Defendant Grashans made the statements with the intent of inducing Plaintiff to rely on them, or that he actually relied on the statements to his detriment.  Plaintiff's claim against Defendant Grashans therefore fails under Federal Rule of Civil Procedure 9(b).

Last, there are no allegations that Defendant Bailey made any statements that she knew to be untrue.  Defendant Bailey had been told by law enforcement that Plaintiff's deed was procured through fraud.  *Id.* ¶ 18.  Defendant Bailey was acting on this reasonable belief when she informed Plaintiff that he would not be able to record the deed at Town Hall.  For these reasons, Plaintiff's claim for fraud fails against Defendant Bailey as well under Federal Rules of Civil Procedure 12(b)(6) and Rule 9(b).

In short, Plaintiff's allegations do not meet the relevant pleading standards to assert claims for common law fraud.  As Plaintiff is proceeding *pro se*, he will be given the opportunity to amend his complaint, to attempt to remedy the deficiencies identified in this ruling.  Plaintiff's common law fraud claims against Defendants Fox, Grashans, and Bailey are therefore dismissed with leave to amend.

B.  False Arrest

The Court construes Plaintiff's complaint as bringing a claim for false arrest under 42 U.S.C. § 1983 and state law, *see* ECF No. 1-1 ¶ 37, and finds that such a claim also fails under Federal Rule of Civil Procedure 12(b)(6).

Section 1983 provides a "private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the

Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citing 42 U.S.C. § 1983). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted). In order to prevail on his false arrest claim under Connecticut law, Plaintiff must show that "(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supposed by probable cause." *Edelman v. Page*, No. 3:00-cv-01166 (JAM), 2015 WL 1395893, at *11 (D. Conn. Mar. 25, 2015) (quoting *Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 443 (D. Conn. 2013)); *see also Nodoushani v. Southern Conn. State Univ.*, 152 Conn. App. 84, 92–93 (2014).[6]

To begin, it is unclear from the face of Plaintiff's complaint whether he was in fact arrested after Grashans obtained a warrant for him on January 19, 2019. Plaintiff only alleges that he was extradited to Connecticut from Florida on an interstate detainer agreement, but not that he was arrested for any particular offense. ECF No. 1-1 ¶ 10. Without further details about the alleged arrest, the Court must conclude that Plaintiff has failed to state a claim for false arrest.

C. Takings

The Court finds that Plaintiff has also failed to plausibly allege a takings claim under 42 U.S.C. 1983 and Connecticut state law. *See* ECF No. 1-1 ¶ 37 (referring to the "illegal taking of his property and land and loss").

---

[6] In addition, "the Second Circuit has held that favorable termination [of the underlying criminal proceedings] is an element of false arrest under Connecticut law," though the Connecticut Supreme Court has not addressed this question. *Ruttkamp v. De Los Reyes*, No. 3:10-cv-392(SRU), 2012 WL 3596064, at *12 (D. Conn. Aug. 20, 2012) (citing *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011)). As Plaintiff's false arrest claim fails for other reasons, the Court need not take up the question of whether favorable termination is an element of a false arrest claim under Connecticut state law.

The takings clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend V. "To state a claim under . . . the Takings Clause, plaintiffs [are] required to allege facts showing that state action deprived them of a protected property interest." *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992). There are two types of takings, physical takings and regulatory takings. A physical taking, which is what is alleged here, occurs "only where it requires the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992).

Even assuming Plaintiff lawfully owns the property, Plaintiff fails to allege that Defendants physically occupied his property at any point in time. At most, Plaintiff alleges that Defendant Colli "intercepted" the tenants one day when they attempted to enter the property. ECF No. 1-1 ¶ 1-1. Even assuming Colli was acting in conspiracy with Fox and Grashans—who are state actors— there are no allegations about what occurred after an arrest warrant was issued. Thus, Plaintiff's takings claim fails as well.[7]

For similar reasons, Plaintiff's taking claim would fail if brought under the Connecticut state constitution. Article first, section 11 of the constitution of Connecticut provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." Under Connecticut law, "[a] constitutional taking occurs when there is a substantial inference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." *Barton v. City of Norwalk*, 326 Conn. 139, 147

---

[7] Defendants also argue that Plaintiff has failed to satisfy the requirement that, before bringing a takings claim in federal court, a plaintiff must attempt to obtain just compensation through a state court or other regulatory proceeding. *See* ECF No. 32-1 at 19 (citing *Silva v. Town of Monroe*, No. CIV 307CV1246VLB, 2010 WL 582611, at *12 (D. Conn. Feb. 16, 2020) (applying *Williamson County v. Regional Planning Comm'n v. Hamilton Bank*, 472 (1985)). In *Knick v. Township of Scott, Penn.*, 139 S. Ct. 2162, 2189 (2019), however, the U.S. Supreme Court overruled the state-litigation requirement set forth in *Williamson County*. Thus, this is not a basis to dismiss Plaintiff's takings claim.

(2017) (internal quotation marks and citations omitted).  Again assuming that Plaintiff has plausibly alleged that he owns the private property at issue, there are no allegations showing that Defendants' actions destroyed or nullified his property's value.

Plaintiff is granted leave to amend to address the deficiencies of this claim.[8]

## V.    CONCLUSION

For these reasons, the motion to dismiss filed by Defendants Fox, Grashans, and Bailey is GRANTED.  Plaintiff may file an amended complaint remedying the defects identified in this Ruling by **April 18, 2024**.

**SO ORDERED** at Hartford, Connecticut, this 28th day of March, 2024.

  /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

---

[8] It is possible that, through use of the phrase "illegal taking of his property and land," Plaintiff intended to invoke the substantive due process protections of the Fourteenth Amendment, which prohibits the state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  Substantive due process "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Cunney v. Bd. of Trs. Of Vill. of Grand View, N.Y.*, 660 F.3d 612, 626 (2d Cir. 2011) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)).  As Plaintiff did not respond to Defendants' motion to dismiss to suggest this was his intent, the Court does not reach the question of whether such a claim would be plausible on the facts alleged.