## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FELIX RODRIGUEZ, | ) | 3:23-CV-00823 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHIEF ALARIC J. FOX, OFFICER | ) | |
| STEVEN GRASHANS, SHAILA M. | ) | March 7, 2025 |
| BAILEY, DEBRA COLLI, AND | ) | |
| STEVEN E. SIDOR, | | |
| *Defendants*. | | |

## RULING AND ORDER ON MOTIONS TO DISMISS FILED BY DEFENDANTS FOX, GRASHANS, BAILEY, AND COLLI AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Sarala V. Nagala, United States District Judge.

Plaintiff Felix Rodriguez, proceeding *pro se*, brings this action against police officers Alaric Fox and Steven Grashans; Enfield, Connecticut, town employee Shaila M. Bailey; real estate agent Debra Colli; and former homeowner Steven Sidor. Plaintiff claims he is the lawful owner of 52 South Road in Enfield, and that efforts by Defendants to obtain possession of that property constitute fraud, led to his false arrest, and amounted to an illegal taking of his property. Defendant Colli and Defendants Fox, Grashans, and Bailey filed separate motions to dismiss all claims against them for failure to state a claim. For the reasons described below, the motions to dismiss are GRANTED IN PART AND DENIED IN PART. While Plaintiff's fraud and false arrest claims and takings claim against Bailey are dismissed, his takings claim against Fox, Grashans, and Colli survives dismissal.

Additionally, Plaintiff has moved for leave to amend the complaint to add two Defendants and to add state law claims. Plaintiff's motion is DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff's original complaint was filed in Connecticut Superior Court and was removed by Defendants.  *See* Not. Removal, ECF No. 1; *Rodriguez v. Fox*, No. 3:23-cv-823 (SVN), 2024 WL 1330831, at *2 (D. Conn. Mar. 28, 2024).   That complaint alleged a single count of fraud against all Defendants in their individual and official capacities and sought $10 million in damages. *Rodriguez*, 2024 WL 1330831, at *2.  Plaintiff also claimed that Defendants' actions resulted in his "false arrest, illegal taking of property and his land, and loss of relationship with his girlfriend, pain and suffering, emotional, mental, and physical distress." *Id.*  On March 28, 2024, the Court granted Defendants' motion to dismiss the original complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b), but allowed Plaintiff leave to amend.  *See id.* at *6.

Plaintiff thereafter filed an amended complaint, which alleges three claims: (1) common law fraud against Defendants Fox, Grashans, and Bailey; (2) false arrest against Defendants Fox and Grashans; and (3) illegal takings against Defendants Fox, Grashans, Bailey, and Colli.  *See* Am. Compl., ECF No. 57.  The amended complaint also lists Steven Sidor as a Defendant, but does not appear to bring any claims against him.[1]

Defendants Fox, Grashans, and Bailey filed a motion to dismiss the amended complaint for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  *See* Mot. to Dismiss, ECF No. 69.  Defendant Colli has also moved to dismiss under Rule 12(b)(6).  *See* Mot. to Dismiss, ECF No. 64.  While these motions were pending, Plaintiff filed a motion for leave to

---

[1] The Court entered an order to show cause why the amended complaint should not be dismissed for failure to state a claim for relief against Sidor.  *See* Order, ECF No. 68.  In response, Plaintiff filed a document that purported to add additional allegations against Sidor.  *See* Motion Incorporating/Amending/Adding Defendant Steven E. Sidor's Statement of Facts, ECF No. 76.  The Court noted that it was inappropriate to seek to add facts to the complaint in a piecemeal fashion.  Order, ECF No. 77.  It directed Plaintiff to file a motion for leave to amend, accompanied by a proposed Second Amended Complaint, if Plaintiff sought to add facts related to Sidor.  *Id.*  The Court addresses this motion below.

file a second amended complaint.  The Court addresses both the motions to dismiss and Plaintiff's motion for leave to amend in this ruling.

## II.    MOTIONS TO DISMISS THE AMENDED COMPLAINT

For the reasons discussed below, the motions to dismiss are granted in part and denied in part.[2]

### A.  Factual Background

The Court accepts the following allegations in Plaintiff's amended complaint as true for purposes of deciding Defendants' motions to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On August 26, 2018,[3] Plaintiff purchased a property from Defendant Sidor located at 52 South Road, Enfield, Connecticut, for $50,000 and proceeded to make repairs on the property. ECF No. 57 ¶ 1.  On November 18, 2018, Plaintiff rented the property to a family of four.  *Id.* ¶ 2. Shortly thereafter, the renters informed Plaintiff that Defendants Colli, a real estate agent, and Grashans, a police officer,[4] claimed that the property was actually owned by Federal National Mortgage, rather than Plaintiff.  *Id.* ¶ 3.  The next day, Plaintiff contacted Defendant Grashans to assert his ownership of the property.  *Id.* ¶ 4.

---

[2] Plaintiff opposed Defendant Colli's motion to dismiss solely on the basis that he claimed to have never received a copy of it.  *See* Pl.'s Br., ECF No. 74.  While the title of this filing purported to be an opposition to the other Defendants' motion to dismiss, the body of the document offered no such opposition.  *See id*; *see also* Order, ECF No. 75.  The Court ordered that a copy of Defendant Colli's motion to dismiss be mailed to Plaintiff by the Clerk's Office as a courtesy.  *See* Order, ECF No. 75.  The Court did not receive any other opposition briefing from Plaintiff, as to Colli's motion or the motion filed by Defendants Fox, Grashans, and Bailey.  The Court must nevertheless decide the sufficiency of the allegations of the amended complaint.  *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

[3] Plaintiff's amended complaint alleges that he purchased the property in question on August 26, 2024.  ECF No. 57 ¶ 1.  But given that the amended complaint was filed on June 3, 2024, and given that Plaintiff's other allegations concerning the property begin in the second half of 2018, the Court assumes that the year listed in paragraph one of the amended complaint is a typographical error.  *See also*, Order, ECF No. 68 (recognizing same typographical error).

[4] The amended complaint does not state who Defendant Grashans's employer is.  The original complaint alleged that he was a police officer in the Enfield, Connecticut Police Department.  Compl., ECF No. 1-1, ¶ 4.

Plaintiff then immediately sought to record the deed to the property at the Enfield Town Hall. *Id.* ¶ 5. Defendant Bailey, who the amended complaint implies is a town employee at Enfield's Registry of Deeds, refused to record the deed, claiming that Defendant Grashans asked her not to record the deed in exchange for a $1,000 gift after Defendant Colli sold the property to an unknown prospective buyer. *Id.* Over the course of a two-month period, Plaintiff repeatedly attempted to record his deed, but these attempts were unsuccessful, as Defendant Bailey accused Plaintiff of not owning the property and having a fraudulent deed. *Id.* ¶ 6. Bailey did, however, offer to record the deed if Plaintiff provided $5,000 cash at a specified drop-off location in Enfield. *Id.* ¶ 8. Plaintiff refused to do so, asserting his right to legally record his deed. *Id.* Defendant Bailey subsequently moved for a "No-Contact order" to prevent further recording attempts. *Id.* ¶ 7.

In January of 2019, Defendant Grashans allegedly issued an arrest warrant for Plaintiff. *Id.* ¶ 13. The amended complaint does not specify the charge(s) in the arrest warrant. Plaintiff alleges that his arrest was approved by Defendant Fox[5] despite Plaintiff previously having informed him about an allegedly coercive attempt by Defendant Grashans and Detective Callaghar[6] to secure half the proceeds of any future sale of Plaintiff's property. *Id.* Plaintiff was ultimately charged with conspiracy and forgery on November 26, 2019, and was extradited from Jackson Correctional Institution in Florida to Hartford, Connecticut for trial. *Id.* ¶¶ 14–15. Plaintiff alleges that his arrest and prosecution stemmed from his refusal to pay Defendant Grashans's "ransom," which

---

[5] The amended complaint simply refers to Defendant Fox as "Chief Fox." ECF No. 57 ¶ 16. The original complaint alleged that Defendant Alaric J. Fox was the Chief of Police for the Enfield, Connecticut Police Department. ECF No. 1-1 ¶ 3.

[6] The amended complaint refers to a "Detective Callaghar," whereas the original complaint referred to a "Detective Callaghan." *Compare* ECF No. 57 ¶¶ 9–13, *with* ECF No. 1-1 ¶ 4. Additionally, the amended complaint does not allege who Detective Callaghar's employer is, but the original complaint alleges that Detective Callaghan was employed by the Enfield, Connecticut Police Department. ECF No. 1-1 ¶ 4. The Court will use the last name Callaghar when discussing the amended complaint, though it notes that Detective Callaghar is not a named Defendant in the amended complaint.

was a demand for fifty percent of any monetary earnings through the sale of the property. *Id.* ¶ 14.

Plaintiff's Public Defender, Judy Trudior, who represented Plaintiff in the subsequent state criminal proceedings, was allegedly falsely informed by Fox that more charges against Plaintiff were imminent and that Plaintiff had submitted a written confession admitting that the deed was false and illegal. *Id.* ¶ 16. Moreover, Fox allegedly told Trudior that the charges against Plaintiff would be dropped if Plaintiff transferred the property to Defendant Grashans. *Id.* ¶ 17. Plaintiff refused to do so. *Id.* Plaintiff contends that Defendants repeatedly assured him that police involvement would cease and that all would be "just fine" if he complied with their demands, including either the transfer of the original deed to Defendant Grashans or the hand delivery of 50 percent of the property's sale value in cash. *Id.* ¶¶ 17–24.

On March 10, 2020, Defendants Colli and Grashans, with Fox's approval, entered Plaintiff's property, changed the locks, posted the property for sale, and barred Plaintiff and members of his family from accessing it. *Id.* ¶ 26; *see also id* ¶ 29.

In or around July of 2020, Defendant Colli contacted Plaintiff, proposing to stop the sale of his property to an unknown buyer if Plaintiff signed over the deed to her "for a reasonable amount." *Id.* ¶ 27. Plaintiff rejected this proposal and ultimately sought a restraining order against Colli to keep her out of his property. *Id.*

Between May and August of 2022, Plaintiff's former girlfriend attempted to record the deed on his behalf. *Id.* ¶ 9. Despite that Plaintiff's girlfriend had submitted the original deed and the recording fee amount, Defendant Bailey "released" the deed and payment to Defendant Grashans and Detective Callaghar instead of recording the deed. *Id.* Plaintiff's former girlfriend was subsequently interviewed by Grashans and Callaghar, who told Plaintiff's girlfriend that this

was not the first time the Plaintiff had stolen a "4-Million Dollar Home,"[7] and threatened to arrest Plaintiff's girlfriend for conspiracy if she continued contact with Plaintiff. *Id.* ¶¶ 10–12.  After Grashans and Callaghar made this threat, Plaintiff "lost contact" with his girlfriend. *Id.*

In August of 2022, Defendant Bailey again made a demand for $5,000 in cash to be delivered to a drop-off location in Enfield, in exchange for her recording of the deed. *Id.* ¶ 25.

As of May 15, 2024, Plaintiff alleges the Defendants have since sold the property for $475,000, dividing the proceeds among themselves. *Id.* ¶ 29.

B.  <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether an amended complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the amended complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

---

[7] The amended complaint does not provide additional context to reconcile the apparent discrepancy between Grashans's statement describing the property as a "4-Million-Dollar Home," Plaintiff's allegation that he purchased the property for $50,000, and Plaintiff's allegation that Defendants sold the property for $475,000.  *See* ECF No. 57.

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Federal Rule 9(b) imposes additional heightened pleading requirements for actions alleging fraud. In order to survive a motion to dismiss, an amended complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." Fed. R. Civ. P. 9(b). Moreover, "[a]lthough a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may include facts showing that the defendant(s) had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, 133 F. Supp. 3d 430, 434 (D. Conn. 2015).

These pleading standards apply to self-represented parties. It is true that Courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006))

(internal quotation marks omitted).  But at the same time, a *pro se* amended complaint must meet the basic pleading standards outlined above to survive a motion to dismiss.  *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

C. Discussion

For the reasons described below, Plaintiff's claims for fraud (Count One), false arrest (Count Two), and illegal takings (Count Three) as to Bailey fail to state a claim, but Plaintiff states a plausible claim for an illegal taking of Plaintiff's property by Defendants Fox, Grashans, and Colli in Count Three.

*1. Fraud (Count One)*

Plaintiff brings a count for common law fraud against Defendants Fox, Grashans, and Bailey.  The Court construes this claim to be one brought under Connecticut common law.

To state a claim for fraud, the amended complaint must meet the heightened pleading standards set forth in Federal Rule 9(b), as explained above, as well as the requirements established under Connecticut law.  Under Connecticut law, fraud consists of "deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed . . . ."  *Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005).  The elements of a fraud action are:  "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment . . . ."  *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 114 (D. Conn. 2010) (quoting *id.*).

a. Defendant Fox

To start, the amended complaint does not state a claim for fraud against Defendant Fox because it fails to allege basic elements of a fraud claim.

Plaintiff alleges that Fox made only one false representation, when Fox "falsely informed" Plaintiff's public defender, Attorney Trudior, that more charges against Plaintiff were imminent and that Fox was in possession of a letter from Plaintiff in which Plaintiff confessed that the deed at issue was "false and illegal." ECF No. 57 ¶ 16. None of Plaintiff's other allegations pertaining to Fox allege that Fox made any false statements. *See, e.g., id.* ¶¶ 13, 17, 26. Thus, the first element of a fraud claim is only satisfied as to Fox's statements to Attorney Trudior.

As for the remaining elements applied to this allegation, even if the Court were to construe Plaintiff as alleging that Fox knew his statements to Plaintiff's counsel were false and that Fox made the statement in question with the intent to induce Plaintiff to sign the deed over to Defendant Grashans, Plaintiff does not allege that he relied on any of Fox's statement to his detriment. To the contrary, Plaintiff, alleges that he "denied" Fox's representations made to Trudior, *id.* ¶ 16, and that he refused to sign over his deed, *id.* ¶ 17. Therefore, the fraud claim against Defendant Fox is dismissed.

b. Defendant Grashans

The amended complaint also fails to plead the required elements of fraud against Defendant Grashans. Plaintiff raises four groups of allegations that may be construed to relate to the fraud claim against Grashans. None of these allegations plausibly state a claim.

The first of the relevant allegations does not even satisfy the first element. Plaintiff alleges that Grashans "threatened false charges" against Plaintiff if Plaintiff did not sell his property and give half of the proceeds to Grashans and Callaghar. *Id.* ¶ 13. But Plaintiff fails to allege this

statement was false.  Indeed, by Plaintiff's own allegations, Grashans's threat was true in that Plaintiff alleges Grashans *did* pursue false charges against Plaintiff for Plaintiff's noncompliance with Grashans's request.  *See id.* ¶¶ 13–14.

The remaining relevant allegations may satisfy the first element, but do not satisfy the remainder of the elements.  Plaintiff alleges that Grashans informed him that there would be "no problems or issues" and that "all would be just fine" and the police would "go away" if Plaintiff sold the property and gave Grashans half of the value of what the property sold for, but that if Plaintiff did not comply, a "false arrest charge would follow for his arrest, false prosecution, and false conviction." *Id.* ¶¶ 18–21.[8]  But Plaintiff fails to allege that Grashans knew these statements were false.  Plaintiff also does not allege that he relied on Grashans's representations to his detriment.  Plaintiff alleges that as a result of "believing" certain false statements made by Grashans, he ignored contacting Internal Affairs, failed to file a harassment complaint, and failed to file this lawsuit sooner.  *Id.* ¶ 21.  But Plaintiff asserts this reliance in a conclusory fashion and, in any event, does not provide sufficient factual allegations to speak to how *not* complying with Grashans's demands could plausibly have led Plaintiff to delay in any of the actions cited.

So, too, does the next relevant allegation fail.  Plaintiff alleges that Grashans falsely induced Plaintiff to believe the police would "go away" if the original deed was signed over to Grashans or if the Plaintiff sold the property and provided half of the proceeds to Grashans.  *Id.* ¶ 24.  Once more, Plaintiff does not endeavor to allege that Grashans knowingly made a false statement and again fails to plausibly allege reliance as to these statements.

Nor does Plaintiff's allegations about Grashans's statement to the couple renting the property from Plaintiff fare any better.  Plaintiff alleges that sometime on or before November 25,

---

[8] The Court reads Plaintiff's reference to "false statements" in paragraph 21 to refer to the statements alleged in paragraphs 18–20.

2018, Grashans informed the couple renting from Plaintiff that Plaintiff did not own the property in question. *Id.* ¶ 3. Plaintiff alleges that statement was false. *See id.* ¶ 4. Thus, the first element is satisfied as to this allegation. But Plaintiff does not allege that Grashans knew the statement made to the renters was false, nor that Grashans intended any sort of reliance. Finally, Plaintiff fails to plausibly allege any sort of reliance on his part in relation to the statement.

Thus, Plaintiff fails to plausibly allege a fraud claim against Grashans under Rule 12(b)(6) and, by implication, under the more stringent Rule 9(b).

### c. Defendant Bailey

Plaintiff's allegations against Defendant Bailey also fall short of plausibly alleging fraud. Plaintiff alleges that Defendant Bailey falsely accused Plaintiff of owning a fraudulent deed and refused to record it as a result. *Id.* ¶¶ 5, 6, 9, 10. However, allegations of Bailey's refusal to record are not allegations of false representation.

Plaintiff further alleges that Bailey stated during a phone call that unless Plaintiff paid her $5,000 in cash, she would not record the deed and Plaintiff would lose the property to Federal National Mortgage. *Id.* ¶¶ 8, 25. While these allegations suggest that Bailey allegedly requested a bribe in order to record the deed, they do not plausibly show that Bailey knowingly made a false statement. In other words, the amended complaint offers no plausible explanation as to how Bailey's alleged demand for money was connected to any false representations, as would be required for the allegation to support a fraud claim.

Plaintiff also alleges that Bailey informed his girlfriend that the deed she was trying to record on Plaintiff's behalf was fraudulent and that she would be arrested in the near future for assisting Plaintiff's efforts to record the deed. *Id.* ¶10. Plaintiff alleges these representations were false. Even assuming this allegation satisfies the first element of a fraud claim, though, it does not

satisfy all of the remaining three.  Notably, Plaintiff fails to allege that Bailey knew that her representations to Plaintiff's girlfriend were false, and Plaintiff does not allege that he relied on Bailey's statement to his detriment.  Accordingly, Plaintiff has failed to plausibly allege a fraud claim as to Bailey that would survive Bailey's motion to dismiss under the Rule 12(b)(6), much less the heightened Rule 9(b) standard.

For these reasons, Plaintiff's fraud claim alleged in Count One must be dismissed against Defendants Fox, Grashans, and Bailey.

### 2.    *False Arrest (Count Two)*

The Court construes Count Two, which is alleged against Defendants Fox and Grashans, as bringing a claim for false arrest under 42 U.S.C. § 1983 and Connecticut law.  It concludes that such a claim fails under Rule 12(b)(6).

Section 1983 provides a "private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citing 42 U.S.C. § 1983).  "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted).

To successfully plead a false arrest claim under Connecticut law —and, therefore, under Section 1983—plaintiff must show that "(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supposed by probable cause." *Edelman v. Page*, No. 3:00-cv-01166 (JAM), 2015 WL 1395893, at *11 (D. Conn. Mar. 25, 2015) (quoting *Sharnick v. D'Archangelo*, 935 F.

Supp. 2d 436, 443 (D. Conn. 2013)); *see also Nodoushani v. Southern Conn. State Univ.*, 152 Conn. App. 84, 92–93 (2014).  Additionally, favorable termination of the underlying criminal proceeding is required to establish a false arrest claim under both Connecticut law and Section 1983.  *See Miles v. City of Hartford*, 719 F. Supp. 2d 207, 213–14 (D. Conn. 2010), *aff'd*, 445 F. App'x 379 (2d Cir. 2011) (citing *Roesch v. Otarola,* 980 F.2d 850, 853–54 (2d Cir.1992)) (holding that under Connecticut law, a false arrest plaintiff must show that the charges terminated favorably).

Here, Plaintiff satisfies the first three elements of a false arrest claim.  First, Plaintiff plausibly alleges he was arrested.  Plaintiff alleges that Defendant Fox approved the arrest warrant, that Defendant Grashans issued the warrant, and that he was "arrested and booked and prosecuted for not paying Defendant Grashans's ransom."  ECF No. 57 ¶¶ 13–14.    These allegations sufficiently allege arrest.  For the remaining elements, Plaintiff states he was aware of his arrest and extradition to Connecticut; and although he does not allege that he did not consent to the arrest, the Court believes this is a reasonable inference to draw from his overall allegations.  *See id.* ¶¶ 13–15.

But Plaintiff fails to plausibly allege that the arrest was not supported by probable cause.  Plaintiff alleges that the arrest stemmed from Defendant Grashans's coercive attempts to obtain proceeds from the sale of his property and that the arrest was part of a scheme to deprive him of his property.  *Id.*  He further asserts that the charges of conspiracy and forgery against him were fabricated.  *Id.* ¶ 14.  However, the amended complaint lacks specific factual allegations making plausible that the arrest warrant was issued without probable cause, as it does not address the factual basis underlying the conspiracy and forgery charges and the information used to obtain the warrant.

Finally, Plaintiff fails to allege that the criminal charges against him were resolved in his favor. Notably, "[p]roceedings are terminated in favor of the accused only when their final disposition is such as to indicate the accused is not guilty." *Torres v. Howell*, No. 3:03-cv-2227 (MRK) (WIG), 2007 WL 2022046, at *2 (D. Conn. July 9, 2007). Plaintiff does not allege that the charges were dismissed, that he was acquitted, or that the proceedings otherwise terminated in his favor. Without allegations of favorable termination, Plaintiff cannot prevail on a false arrest claim under § 1983 or Connecticut law. Plaintiff's false arrest claim against Defendants Fox and Grashans is therefore dismissed.

### 3. Illegal Takings (Count Three)

Count Three of Plaintiff's amended complaint purports to state an illegal takings claim against Defendants Bailey, Fox, Grashans, and Colli. *See* ECF No. 57 at 8. The Takings Clause of the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const., amend. V. Similarly, Article first, section 11 of the Connecticut Constitution provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." Conn. Const. art. I, § 11. The Court construes this claim as being pursued under Section 1983.

First, the Court concludes that Plaintiff has not plausibly alleged that Bailey is liable for an illegal taking. Plaintiff alleges that Bailey refused to record his deed, but at no point alleges that she physically occupied his property. *See Rodriguez*, 2024 WL 1330831, at *5–6 (describing the requirements of a physical takings claim). Thus, Plaintiff does not allege a physical taking, as he does for Fox, Grashans, and Colli, as discussed below. Neither does Plaintiff's claim fit under the well-recognized rubric of a regulatory taking. *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321–22 (2002) (noting that regulatory takings

claims arise when there are allegations that a governmental body's regulations "prohibit a property owner from making certain uses of her private property"). Plaintiff, who did not oppose Bailey's motion to dismiss, does not endeavor to argue how a town clerk's failure to record a deed legally constitutes a taking and the Court is not convinced that Bailey's alleged actions fit under any recognized form of a taking. More fundamentally, Plaintiff fails to allege that Bailey took anything from him. Put another way, Plaintiff fails to articulate what harm resulted from Bailey's actions. It is possible that, without having his deed recorded, Plaintiff would not have been able to avail himself of the benefits of the Connecticut recording statute. *See* Conn. Gen. Stat. § 47-10. But Plaintiff fails to allege any such harm actually occurred; he does not, for example, allege that he tried to avail himself of the protections of Connecticut's recording statute, or that he otherwise attempted to assert his property rights, and was unsuccessful because the deed to the property had been recorded in another's name. Accordingly, the takings claim against Bailey fails.[9]

The Court concludes, however, that the amended complaint plausibly alleges an illegal taking by Fox, Grashans, and Colli. The Court previously dismissed Plaintiff's takings claim from the original complaint because he had not alleged that Defendants had physically occupied his property. *Rodriguez*, 2024 WL 1330831, at *5–6. In the amended complaint, however, Plaintiff alleges that he had a property interest in the home, and that Defendants Colli and Grashans, at the direction of Fox,[10] locked him out, deprived him of access, sold his property, and divided the proceeds equally amongst themselves. These allegations, taken as true, would lead to the

---

[9] To the extent Plaintiff's takings claim against Bailey could be construed to rely on his allegation that Bailey "released" Plaintiff's deed to Grashans and Callaghar, such reliance is misplaced. Plaintiff does not endeavor to articulate what a deed release is or any harm that he suffered because of it.

[10] In the context of pleading liability of a supervisor under § 1983, a plaintiff must plead and prove that each defendant "through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). *Respondeat superior* is not an applicable theory of liability; a Plaintiff must plead an injury in some way attributable to the supervisor. *Id.* at 616–18. Here, Plaintiff's theory of liability is not a vicarious one. Rather, he alleges direct involvement on the part of Fox in that he approved Colli and Grashans's actions. ECF No. 57 ¶ 26. Accordingly, the Court analyzes Fox's actions alongside those of Colli and Grashans.

reasonable inference that these Defendants physically occupied a property in which Plaintiff had a cognizable property interest.

This leads to the question of whether Defendants Fox, Grashans, and Colli took the property for "public use," as the Takings Clauses of both the U.S. and Connecticut Constitutions require. The allegations suggest that these three Defendants took the property to enrich themselves personally, with no public use in mind. The United States Supreme Court has held that a city government "would no doubt be forbidden from taking petitioners' land for the purpose of conferring a private benefit on a particular private party." *Kelo v. City of New London, Conn.*, 545 U.S. 469, 477 (2005); *see also Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void."); *Montgomery v. Carter Cnty., Tennessee*, 226 F.3d 758, 766 (6th Cir. 2000) ("Private-use takings, rare as they may be, are unconstitutional regardless of whether just compensation is paid.") (citing *Midkiff,* 467 U.S. at 245). If Fox, Grashans, and Colli acted under color of state law, the amended complaint alleges essentially a full-blown private use taking: the taking of Plaintiff's property to confer a private benefit upon themselves. *See* 42 U.S.C. § 1983; *Blyden*, 186 F.3d at 264.

The Court therefore turns to the question of whether Defendants Fox, Grashans, and Colli, acted under color of state law, and concludes that they did. To act under color of state law requires a defendant to have "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). However, "[m]ere employment by a state or municipality does

not automatically mean that a defendant's actions are taken under the color of state law." *Kern*, 93 F.3d at 43. Indeed, "where an individual employed by the state engages in action unrelated to his status as a state employee, the action is not considered under color of state law." *Rodriguez v. New York City Transit Auth.*, No. 06 CIV. 13762 (RJS), 2009 WL 3817298, at *4 (S.D.N.Y. Nov. 10, 2009) (collecting cases).

The amended complaint plausibly alleges that Defendants Fox and Grashans acted under color of state law. Plaintiff alleges that Fox is a "Chief," which this Court construes to be a state or local police chief. Plaintiff also alleges that Grashans is a police officer, which this Court construes to be a state or local police officer. Moreover, Plaintiff alleges that Grashans entered Plaintiff's property "with the approval of Fox," which connotes governmental action. Plaintiff does not allege that Fox and Grashans acted in their personal capacities in relation to the alleged seizure and, consistent with construing *pro se* pleadings to raise the strongest arguments they suggest, the Court concludes that Plaintiff has plausibly pleaded that Fox and Grashans acted under color of state law in the context of the alleged seizure of Plaintiff's property.

Finally, the complaint plausibly alleges that Defendant Colli acted under color of state law, despite that she is alleged to be a private actor. A private actor acts under color of state law when she "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). In turn, a private actor is considered "a willful participant in joint activity with the State or its agents" if they share a common goal to infringe upon the plaintiff's rights. *Betts v. Shearman*, 751 F.3d 78, 84–85 (2d Cir. 2014). While Colli is alleged to be a real estate agent and not a municipal employee, the amended complaint plausibly alleges that she acted in concert with Defendant Grashans and Fox, with the common goal of

17

denying Plaintiff's realization of his property interest. Therefore, the Court finds that she acted under color of state law for pleading purposes.

Because the amended complaint plausibly alleges Defendants Fox, Grashans, and Colli acted under color of state law in effecting a taking of Plaintiff's property without just compensation, Count Three of the amended complaint survives dismissal as to these Defendants.

In sum, of the three claims alleged in the amended complaint, Counts One and Two are dismissed as to all Defendants and Count Three is dismissed as to Defendant Bailey, but not as to Defendants Fox, Grashans, and Colli.

## III.    LEAVE TO AMEND

As explained above, while Defendants' motions to dismiss the amended complaint were pending, Plaintiff filed a motion for leave to amend. For the reasons described below, Plaintiff's motion for leave to amend the amended complaint is DENIED.

### A.  Background

On August 23, 2024, Plaintiff moved for leave to file a Second Amended Complaint ("SAC"). Plaintiff asserts the following grounds for the amendment:

> [Plaintiff] unintentionally failed to name all Defendants and only included Defendant Steven E. Sidor, in his amended complaint, believing at the time the Plaintiff could amend the allegations and counts as to each Defendant separately. Petitioner files this Second Amended [C]omplaint in good faith in order to correct his prior defects which were not in compliance with the Rules of Federal Court.

*See* ECF No. 82 ¶¶ 2–3 (numbering omitted).

The proposed SAC ("PSAC") largely mimics the original complaint that the Court dismissed, and differs in many material respects from the amended complaint. *Compare* ECF No. 82 at 2–10 *with* ECF No. 1-1 at 3–10 *and* ECF No. 57. The PSAC seeks to add both new Defendants and new claims, when compared to the amended complaint. First, the PSAC seeks to

add Jesse Brownback and Detective Callaghan as new defendants.[11]  Additionally, in addition to asserting claims for fraud (Count One) and unlawful taking (Count Two), the PSAC seeks to add state common law claims for negligence (Count Three), and "emotional, physical, and mental distress" (Count Four), which the Court construes as claims for intentional infliction of emotional distress and negligent infliction of emotional distress.[12]

B.  Allegations of the PSAC

As noted above, the allegations of the PSAC largely track those of Plaintiff's original complaint.  Plaintiff alleges he purchased Defendant Sidor's property at 52 South Road, Enfield, Connecticut, for $50,000, on August 26, 2014, and began making repairs on the property.   ECF No. 82, ¶¶ 11–12.  On November 18, 2018, Plaintiff began renting the property to two tenants.  *Id.* ¶ 13.  One week later, the tenants notified Plaintiff that they had been contacted by Defendants Colli and Grashans, who informed them that Federal National Mortgage owned the property, not Plaintiff.  *Id.* ¶ 14.

On December 5, 2018, Plaintiff attempted to record the deed for his property, but Defendant Bailey refused to record the deed, as she was under the belief that the deed was fraudulent.  *Id.* ¶ 15.

On January 9, 2019, Colli falsely claimed, to an unspecified person, that Fannie Mae owned the property, and Colli "intercepted" the tenants at the property's entrance.  *Id.* ¶ 17.  Colli told

---

[11] The Court previously dismissed Brownback from the original complaint because he is deceased.  *See* Order, ECF No. 24.  The Court believes Detective Callaghan is the same person referred to as Detective Callaghar in the amended complaint.

[12] Each count is purportedly brought against "[a]ll [n]amed Defendants," as specified in the heading for each count. ECF No. 82 ¶¶ 39–42.  While each count also has a specifically enumerated list of Defendants that Plaintiff claims to be suing and those enumerated lists omit Defendant Bailey, the Court construes Plaintiff's proposed pleading liberally and gives weight to Plaintiff's heading representing he is bringing the claims against "[a]ll [n]amed Defendants," to include Bailey.

Plaintiff that another police department was investigating the matter and she personally knew Plaintiff could not afford to purchase the property because he was incarcerated. *Id.*

On February 19, 2019, Defendants Detective Callaghan and Officer Steven Grashans spoke with Sidor, who denied having sold the property to Plaintiff. *Id.* ¶ 19. Sidor later admitted to Plaintiff that he "lied about having signed the deed in front of Notary Public [Defendant] Jesse B. Brownback," because Callaghan and Grashans had threatened Sidor to do so.[13] *Id.* ¶¶ 3, 19; *see also id.* ¶ 36. Around this time, Brownback also told Plaintiff that he had falsely stated to an unidentified person that he did not notarize Plaintiff's deed because Grashans and Callaghan threatened to arrest Brownback if he did not cooperate with their false investigation into Plaintiff and their efforts to "frame" him. *Id.* ¶ 22. Plaintiff also alleges that around April 2022, he learned "through a reliable source" that Brownback and Sidor had provided false information to Grashans and Callaghan in order to assist Fannie Mae and Defendants Fox, Grashans, and Callaghan with taking possession of the property, so that Colli would give a considerable monetary donation to the Enfield Police Department. *Id.* ¶¶ 2, 23. These allegedly false representations by Brownback and Sidor were incorporated into a police report. *Id.* ¶ 25.

On January 19, 2019, Grashans, with the approval of Fox, issued an arrest warrant against Plaintiff, charging him with forgery in the third degree and conspiracy in the second degree. *Id.* ¶ 31. Plaintiff asserts that these were false charges, though he was extradited from Florida to face them. *Id.* The charges were eventually "nolo processed" in December of 2021. *Id.*

In or around February of 2019, Grashans "falsely issued an arrest warrant" against an individual named Jose Cuevas, whom the proposed SAC suggests is Plaintiff's brother, and whom

---

[13] Taken in the context of the complaint, the Court understands this allegation to allege that Sidor lied to Grashans and Callaghan by saying that he did not have the deed signed in front of Brownback when, in fact, he did. The Court makes this determination notwithstanding that a plain reading of the sentence in isolation may indicate the opposite.

Grashans claimed assisted Plaintiff "in the alleged crime." *See id.* ¶¶ 20–21. Plaintiff believes that Grashans falsely brought charges against Cuevas as "leverage" to force Plaintiff to surrender his property to him and to "avoid detection that a fraud was being committed by the Defendants against [Plaintiff]." *Id.* ¶ 21.

On November 26, 2019, Grashans and Callaghan offered that if Plaintiff joined their alleged "ongoing property scheme," Plaintiff would receive monetary compensation for future properties taken as part of the scheme. *Id.* ¶ 37. Plaintiff refused this offer. *Id.*

On January 20, 2020, Fox spoke over the phone with Plaintiff and allegedly misled Plaintiff "not to file suit" because Fox represented he would drop the allegedly false charges against Plaintiff and return possession of the property. *Id.* ¶ 32. Plaintiff alleges that he relied on this statement and was "severely damaged" as a result. *Id.*

Throughout 2022, Plaintiff made several efforts to record his deed, which had been signed by Sidor and notarized by Brownback. *Id.* ¶ 26. Plaintiff's girlfriend, Jonell L. Breesmen, also attempted to record the deed by mailing it and a $60.00 money order to the Town Hall. *See id* ¶ 28. Grashans and Callaghan told Breesmen to not contact Plaintiff again or she would be arrested for conspiracy, because "this was not [Plaintiff's] first time stealing a $4,000,000.00 home." *Id.* This information was false and detrimental to Plaintiff's relationship with Breesmen. *Id.* The day after Grashans and Callaghan contacted Breesmen, she sent an email to Plaintiff saying that she did not want him to contact her again because she did not want to go to jail. *Id.* ¶ 29. Plaintiff has not been in contact with Breesmen since. *Id.* Ultimately, in the summer of 2022, Bailey received Plaintiff's deed and money order; instead of recording the deed, however, she contacted Grashans and Callaghan and "released the Quitclaim to both detectives" against Plaintiff's wishes. *Id.* ¶ 27.

At an unspecified time, Colli told Plaintiff that she was not going to resell the property at issue and that she was only acting on the directions of Grashans and Callaghan to "frame" Plaintiff. *Id.* ¶ 33.

On August 20, 2023, Bailey advised Plaintiff to release all rights of the property to the police detectives and that if he did not, he would be arrested. *Id.* ¶ 34. Bailey also told Plaintiff that she knew how to forge and manipulate deeds and, if she needed to, she would alter Plaintiff's recorded deed "to reflect a voided deed accidentally recorded." *Id.* ¶ 35.

Plaintiff alleges that all Defendants, jointly and individually, acted in bad faith with the intent to defraud Plaintiff of his interests in his property, in exchange for a "comfortable donation" received on or about March 15, 2022, to the Enfield Police Department. *Id.* ¶ 30.

Notably, the PSAC does not contain any of the factual allegations present in the amended complaint regarding any Defendants changing the locks, posting the property for sale, and ultimately selling the property for their own financial benefit.

## C. Legal Standard

Under Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend his complaint once as a matter of course within twenty-one days after service of the complaint or within twenty-one days after service of a responsive pleading. *See* Fed. R. Civ. P. 15(a)(1)(A)–(B). Otherwise, the plaintiff may amend his complaint only with "the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court "has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

An amendment to a complaint is considered futile if the proposed claim could not withstand a motion to dismiss brought under Rule 12(b)(6) or would be subject to a successful motion to dismiss on another basis. *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 250 (D. Conn. 2014) (noting that a proposed amendment would be futile if it, among other things, would deprive the court of subject matter jurisdiction).

Delay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). In determining what constitutes prejudice, the court considers whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350 (collecting cases).

Only Defendants Fox, Grashans, and Bailey have opposed Plaintiff's motion for leave to amend. *See* Opp. Br., ECF No. 85. They argue that the proposed amendments are futile and that they would be prejudiced if the amendments were allowed. In assessing these arguments, the Court is mindful that an amended complaint is intended to completely replace the prior complaint in the action and thus would render any prior complaint "of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). The Court therefore reviews the proposed SAC's allegations standing alone, without reference to the amended complaint.

### D. Futility

The Court first holds that the takings claim in the PSAC is futile. As that is the only federal claim, and as the Court would not have diversity jurisdiction over the case for the reasons explained below, the Court would lack subject matter jurisdiction over the remaining state law claims.

Moreover, the Court would decline to exercise supplemental jurisdiction over a PSAC that alleges state law claims only.

### 1. Illegal Takings (Count Two)

The Court first addresses the only federal law claim in the PSAC—illegal takings, as alleged in Count Two—and finds that it is futile.

"To state a claim under . . . the Takings Clause, plaintiffs [are] required to allege facts showing that state action deprived them of a protected property interest." *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992). There are two types of takings, physical takings and regulatory takings. As described above, a physical taking, which is what is alleged here, occurs "only where it requires the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992).

Plaintiff's federal takings claim in the PSAC fails for the same reason it failed in Plaintiff's original complaint: the allegations of the PSAC fail to allege any meaningful physical occupation of his property. *See Rodriguez*, 2024 WL 1330831, at *5–6. While the *amended complaint* contained an allegation that Colli and Grashans, at the order of Fox, physically entered Plaintiff's property, changed the locks, and excluded Plaintiff and others from the property, such an allegation is noticeably absent from the PSAC. Plaintiff does allege that Colli "intercepted" Plaintiff's tenants one day when they attempted to enter the property. ECF No. 82 ¶ 17. But such an interaction does not rise to the level of occupation of Plaintiff's property. The federal takings claim is therefore futile.

### 2. Remaining State Law Claims

The remaining claims in the PSAC are exclusively state law claims. Count One alleges common law fraud; Count Two includes a takings claim under the Connecticut Constitution; Count

Three asserts common law negligence; and Count Four asserts intentional and negligent infliction of emotional distress. As the Court has found the only federal claim in the PSAC futile and would not have original jurisdiction over the remaining state law claims for the reasons expressed below, it holds that the proposed amendments are futile, and therefore denies Plaintiff's motion for leave to amend in full.

The subject matter jurisdiction of the federal courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. The requirement of subject matter jurisdiction cannot be waived, and jurisdictional issues may be raised at any time by a party or by the Court *sua sponte*. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over civil actions arising under the Constitution, laws, and treaties of the United States. Under 28 U.S.C. § 1332, federal courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000 and, as relevant here, the matter is between citizens of different states.

Defendants Fox, Grashans, and Bailey removed this action to federal court on the basis of both federal question jurisdiction *and* diversity jurisdiction. *See* Not. of Removal, ECF No. 1 at 3 (asserting original jurisdiction "under 28 U.S.C. §§ 1331, 1332"). As the Court has found the federal takings claim in the PSAC futile, it would lack federal question jurisdiction over the PSAC. The remaining question is, then, whether it has original jurisdiction over the remaining claims of the PSAC through the exercise of diversity jurisdiction, or whether it should otherwise exercise supplemental jurisdiction over the remaining state law claims.

The Court concludes it does not have diversity jurisdiction over the remaining claims because Plaintiff and Defendants are not citizens of different states for purposes of diversity jurisdiction, even though Plaintiff was incarcerated in Florida at the time this case was filed. An

individual's citizenship is determined by their domicile. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Defendants Fox, Grashans, Bailey, Colli, and Sidor are represented to be citizens of Connecticut. *See* ECF No. 1-1 at 1–2. Plaintiff is a prisoner, and a prisoner is presumed to retain his pre-incarceration domicile, for diversity of citizenship purposes, even though he may be incarcerated in a different state. *See, e.g., Allen v. Mag-Ent*, No. 15-cv-6331 (WFK) (CLP), 2015 WL 8770078, at *3 (E.D.N.Y. Dec. 14, 2015). The presumption that a prisoner retains his pre-incarceration domicile is rebuttable when "truly exceptional circumstances" would "justify a finding that [the prisoner] has acquired a new domicile at the place of his incarceration." *Braten v. Kaplan*, No. 07-cv-8498 (HB), 2009 WL 614657, at *4 (S.D.N.Y. Mar. 10, 2009) (quoting *Jones v. Hadican*, 552 F.2d 249, 251 (8th Cir. 1977)). Here, the allegations of the PSAC strongly suggest that Plaintiff's pre-incarceration domicile was Connecticut, as he alleges purchasing the property in Connecticut, and there are no indications his domicile would be in any other state. Nor does the complaint "allege facts sufficient to raise a substantial question" about Plaintiff's "intention to acquire a new domicile." *Jones*, 552 F.2d at 251.

The Court therefore concludes that Plaintiff is considered a citizen of Connecticut for purposes of diversity jurisdiction. Since some Defendants are also citizens of Connecticut, complete diversity does not exist. Moreover, the PSAC references that Plaintiff purchased the property at issue for $50,000, *see* PSAC ¶ 11, and the face of the PSAC does not provide a basis for concluding that the amount in controversy is greater than $75,000. *See Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (recognizing a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in

controversy).[14]   The Court therefore concludes it cannot exercise original jurisdiction over the remaining state law claims in Plaintiff's PSAC.  Allowing Plaintiff to amend would therefore be futile in this Court.  *See Faryniarz*, 62 F. Supp. 3d at 249 (noting that amendments that destroy subject matter jurisdiction are futile).

Additionally, the Court would decline to exercise supplemental jurisdictions over a second amended complaint that alleged only state law claims.  Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which outlines the circumstances under which claims that independently cannot qualify for federal jurisdiction can nonetheless be heard in federal court.  Specifically, 28 U.S.C. § 1367(c)(3) allows for a district court to decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.  Here, this subsection applies as the Court has dismissed all of the PSAC's claims over which the Court would have original jurisdiction.

In general, however, a district court should not decline to exercise supplemental jurisdiction under Section 1367(c) without evaluating whether doing so would promote the values of economy, convenience, fairness, and comity.  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004).  But "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

---

[14] The PSAC does not contain the allegation of the amended complaint that the home was later sold for $475,000. And while the PSAC does allege that Grashans and Callaghan told Plaintiff's girlfriend that this was not his first time stealing a four million dollar home, *see* ECF No. 82 ¶ 28, there are no allegations plausibly suggesting that the home was actually worth four million dollars.

Indeed, here the Court finds that the factors of judicial economy, convenience, fairness, and comity, counsel in favor of declining to exercise supplemental jurisdiction. This case, which is only now making its way through the motion to dismiss stage, is far from trial. Moreover, the Court has stayed discovery, so there would be little to no reason to keep the case in federal court for efficiency's sake. In light of these considerations, the Court would decline to exercise supplemental jurisdiction over a second amended complaint that presented no basis for original jurisdiction in federal court.

Thus, Plaintiff's motion for leave to amend is DENIED. The Court need not reach Defendants' other arguments opposing this motion.

## IV.     CONCLUSION

In sum, the Court GRANTS IN PART AND DENIES IN PART the motions to dismiss the amended complaint, ECF Nos. 64, 69, such that the only claim that is allowed to proceed from the amended complaint is Plaintiff's illegal takings claim against Defendants Fox, Grashans, and Colli. The Clerk shall terminate Defendants Sidor and Bailey from this action. The Court DENIES Plaintiff's motion for leave to amend, ECF No. 82.

Defendants Fox, Grashans, and Colli shall answer the amended complaint by March 28, 2025. The Court also *sua sponte* lifts the stay of discovery imposed by its order at ECF No. 78. Plaintiff and Defendants Fox, Grashans, and Colli shall submit a Rule 26(f) report by April 11, 2025.

**SO ORDERED** at Hartford, Connecticut, this 7th day of March, 2025.

   */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE